Adrian Ritchie et al.  
vs.  
Mortimer A. Sullivan,  
Mayor, et als.  
⎱Eq. No. 2423.

January 19, 1933.

JOSLIN, J. This is a bill in equity in which the complainants, as taxpayers of the City of Newport, seek to have declared void a certain contract between the City of Newport and one Nathan David for the collection and disposal of city refuse. The respondents are the Mayor, Treasurer and members of the Board of Aldermen of the City of Newport. The matter is before the Court at this time on the prayer for a preliminary injunction against the respondents from proceeding to carry out the terms of said contract.

The City of Newport is under contract for the collection and disposal of the city refuse. This contract, commonly referred to as the "Ash Contract," expires on April 15, 1933.

At the meeting of the Board of Aldermen held on November 17, 1932, it was voted to direct the city clerk to advertise for proposals for the collection and disposal of city refuse. Pursuant to said vote the city clerk did so advertise, and thereafter, at the meeting of the board of aldermen held December 6, 1932, the proposals were received and examined, and it was voted to award the contract for the period of three years from April 16, 1933, for the sum of $38,000. The complainants were among the unsuccessful bidders and they challenge the legality of the city's right to enter into said contract.

They first urge that the board of aldermen is without authority to enter into the contract without specific direction and authorization by the representative council.

The municipal government of the City of Newport is unlike that of any other public corporate body in this state. The amended charter of 1906 (since further amended) creates a body known as the representative council. This council is vested with the control of the city's "fiscal, prudential and municipal affairs" and also with "all the general and special powers conferred by statute upon city councils". The executive powers of the city are vested in a mayor and four aldermen who "exercise a general supervision over all matters affecting the public welfare of the city", and, "unless otherwise specially provided, all the powers, general or special, now conferred by statute upon town councils and boards of aldermen shall in the City of Newport be vested in the board of aldermen".

Sec. 2, Chap. 47, Gen. Laws 1932, provides that towns "may make all contracts necessary and convenient for the transaction of the business of the town". Sec. 4, Chap. 51, Gen. Laws 1923, provides that "the town council of each town shall have full power to manage the affairs and interests of such town and to determine all such matters and things as shall by law come within their jurisdiction."

The representative council took no action in respect to the contract in question, either authorizing it or otherwise. The question therefore arises whether under the broad powers given to the board of aldermen by the provisions above quoted, it would, in the absence of any action by the representative council, have the right to make the contract.

In the opinion of the Court, this right does reside in the board of aldermen. They may, under the charter and statutory powers above quoted, initiate movements in the public interest and arrange the terms of and enter into otherwise proper contracts, subject always to the exclusive power of the representative council relative to appropriations and to imposition of liability on the city.

In the case of *Cascambas* vs. *City of Newport.* 45 R. I. 245, at page 351, the Court said:

"The power to determine the provisions of a lease of Easton's Beach and to direct its execution undoubtedly resides in the representative council; and, unless otherwise directed by the representative council, the board of aldermen under the charter must also be regarded as a proper governmental agency to administer this public trust. * * * Unless directed otherwise by the representative council, the board of aldermen in the exercise of its executive power might properly have authorized the Mayor to execute a lease similar to the one in question."

The complainants next attack the authority of the Board of Aldermen to make the contract because it involves liability in behalf of the city and no appropriation was first made therefor by the representative council.

Sec. 19 of the charter provides: "No expenditures shall be made nor liability incurred by or in behalf of the city, until an appropriation has been duly voted by the representative council sufficient to meet such expenditures or liability * * * ".

The vote of December 6, 1932, was that "the ash contract be awarded * * * ". This is a bare statement and to determine what was meant by "ash contract" the Court admitted in evidence the draft of the contract prepared by the city solicitor prior to the institution of this action. The Court also considered the 1928 ash contract which is to expire in April, 1933. The draft follows closely the idea and form of the 1928 contract. In the opinion of the Court both the Board of Aldermen and the contractor had this form of contract in mind when the bid was made and the award voted. Among other things it requires that the contractor collect and dispose of the city refuse; that he perform the require-

ments in accordance with the advertisement; and that he provide suitable and necessary equipment and labor to the satisfaction of the commissioner of public works.

While the contract is commonly referred to as a three-year contract, it is in effect no more than a contract for each of the three fiscal years beginning in April, 1933, April, 1934, and April, 1935, and is conditioned upon the representative council appropriating for each of said fiscal years a sum of money required to be paid under the terms of the contract. The contract specifically provides that if the representative council fails to appropriate for the fiscal year of 1933 a sum of money for refuse disposal sufficient to carry on the contract for that year, then the contract is at end. In other words, the contract virtually is not effective until and unless the representative council votes the money. Similarly, if by action of the representative council the contract becomes effective for the fiscal year of 1933, it is not effective for each of the succeeding two years until and unless in due time the representative council votes the appropriation therefor. It will thus be seen that the contract does not bind the city unless in pursuance of Sec. 19 of the charter the representative council actually votes the appropriation for each of the said fiscal years. No liability has been incurred by the city and there is no financial obligation on the city until and unless the representative council votes the appropriation. In fact, the instrument which has been referred to as a contract, becomes null and void if there is no affirmative action on the part of the representative council. The instrument is conditional for its vitality upon such affirmative action. The charter does not provide when the appropriation must be voted. The language is that no liability shall be incurred "until an appropriation has been voted

by the representative council." It does not say "first" voted. This vote may be had before a contract is made, or it may be had after a contract is made. provided that the contract has the protective provisions contained in the draft in question.

The Court therefore concludes that the action of the Board of Aldermen does not violate the charter provision that no liability shall be incurred in behalf of the city until an appropriation therefor shall be duly voted by the representative council.

*Finally*, the complainants challenge the right of the Board of Aldermen to make a contract for a term extending beyond their terms of office. They argue that in voting the contract on December 6, 1932, to commence on April 16, 1933, they were usurping the powers and functions of the incoming members of the Board of Aldermen whose terms were to commence January 2, 1933. The respondents reply that there is no allegation of fraud in the bill of complaint nor is there any suggestion of bad faith or improper motives on the part of the members of the Board of Aldermen or of the contractor; furthermore, that the contract is for a reasonable period of time and for a price considerably below the price of the contract soon to expire; and that it is to the advantage of the city to award the contract to Nathan David in consideration of his past satisfactory performance, and of his superior equipment and familiarity with the needs of the city.

There is nothing in the case to contradict the foregoing assertions. Furthermore, the Court attributes to the Board of Aldermen honest intentions to give their best judgment to the interests of the city. Nevertheless, this is no sufficient answer to the complaint.

The subject matter of the contract in question is undoubtedly a governmental function and involves the exercise of discretion and judgment by the Board of Aldermen in office at the time of the expiration of the present contract or within a reasonable time prior to the said expiration.

The respondents argue that, in the event that a new contractor was chosen, four months is not unreasonable to enable him to procure his equipment and organize his business. However, the bill of complaint alleges "that said period of over four months greatly and unreasonably exceeds the time necessary for any successful bidder to prepare and arrange for the performance of said contract," and that "one month prior to the beginning of the performance of said contract would be fully sufficient time" was not contradicted by any testimony of the respondents. The Court must therefore conclude that no reasonable necessity existed on December 6, 1932, for the Board of Aldermen then in office to provide the city with said contract to commence more than four months thereafter, when their terms of office will have expired. Certainly no emergency existed. In such circumstances, the Board of Aldermen, though acting in good faith, nevertheless acted beyond its authority.

For the reason lastly discussed, the Court is constrained to grant the preliminary injunction. The Court will hear the parties on the form of a decree.

For the complainant: Jeremiah P. Mahoney, Esq.

For the respondent: Jeremiah A. Sullivan, Esq.